UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

APACHE CORPORATION                    CIVIL ACTION NO. 4:22-CV-2019

     *Plaintiff,*                         JURY DEMANDED

v.

LLOG EXPLORATION COMPANY,
LLC

     *Defendant.*

**********************************************************************************

### ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT WITH COMPULSORY COUNTERCLAIM AGAINST APACHE CORPORATION ON BEHALF OF LLOG EXPLORATION COMPANY, LLC

NOW INTO COURT, through undersigned counsel, comes defendant, LLOG EXPLORATION COMPANY, L.L.C., (hereinafter referred to as "LLOG") who responds to the Original Complaint of plaintiff, Apache Corporation, with its Answer and Affirmative Defenses, and who asserts its Compulsory Counterclaim against Apache Corporation (hereinafter referred to as "Apache") as follows:

### FIRST DEFENSE

The Complaint fails to state a claim or action against LLOG upon which relief can be granted.

### SECOND DEFENSE

This matter is not subject to Arbitration.

### THIRD DEFENSE

Louisiana law, not Texas law, is applicable to this lawsuit and all causes of action alleged herein.

**Further responding to the allegations of the Original Complaint, LLOG avers as follows:**

1.

The allegations contained Paragraph 1 of the Complaint are denied for lack of sufficient information upon which to form a belief.

2.

The allegations contained in Paragraph 2 of the Complaint are denied for lack of sufficient information upon which to form a belief.

3.

The allegations contained in Paragraph 3 of the Complaint are denied for lack of sufficient information upon which to form a belief.

4.

The allegations contained in Paragraph 4 of the Complaint are denied for lack of sufficient information upon which to form a belief.

5.

The allegations contained in Paragraph 5 of the Complaint are denied for lack of sufficient information upon which to form a belief.

6.

The allegations contained in Paragraph 6 of the Complaint are denied for lack of sufficient information upon which to form a belief.

7.

The allegations contained in Paragraph 7 of the Complaint are denied for lack of sufficient information upon which to form a belief.

8.

The allegations contained in Paragraph 8 of the Complaint are denied for lack of sufficient information upon which to form a belief.

9.

The allegations contained in Paragraph 9 of the Complaint are denied for lack of sufficient information upon which to form a belief.

10.

The allegations contained in Paragraph 10 of the Complaint are admitted.

11.

The allegations contained in Paragraph 11 of the Complaint are admitted.

12.

The allegations contained in Paragraph 12 of the Complaint are admitted.

13.

The allegations contained in Paragraph 13 of the Complaint are denied for lack of sufficient information upon which to form a belief.

14.

The allegations contained in Paragraph 14 of the Complaint are denied for lack of sufficient information upon which to form a belief.

15.

The allegations contained in Paragraph 15 of the Complaint are denied for lack of sufficient information upon which to form a belief.

16.

The allegations contained in Paragraph 16 of the Complaint are denied for lack of sufficient

information upon which to form a belief.

17.

The allegations contained in Paragraph 17 of the Complaint are denied for lack of sufficient information upon which to form a belief.

18.

The allegations contained in Paragraph 18 of the Complaint are denied for lack of sufficient information upon which to form a belief.

19.

The allegations contained in Paragraph 19 of the Complaint are denied for lack of sufficient information upon which to form a belief.

20.

The allegations contained in Paragraph 20 of the Complaint are denied for lack of sufficient information upon which to form a belief.

21.

The allegations contained in Paragraph 21 of the Complaint are denied for lack of sufficient information upon which to form a belief.

22.

The allegations contained in Paragraph 22 of the Complaint are denied for lack of sufficient information upon which to form a belief.

23.

The allegations contained in Paragraph 23 of the Complaint are denied for lack of sufficient information upon which to form a belief.

24.

The allegations contained in Paragraph 24 of the Complaint are denied for lack of sufficient information upon which to form a belief.

25.

The allegations contained in Paragraph 25 of the Complaint are denied for lack of sufficient information upon which to form a belief.

26.

The allegations contained in Paragraph 26 of the Complaint are denied for lack of sufficient information upon which to form a belief.

27.

The allegations contained in Paragraph 27 of the Complaint are denied for lack of sufficient information upon which to form a belief.

28.

The allegations contained in Paragraph 28 of the Complaint are denied for lack of sufficient information upon which to form a belief.

29.

The allegations contained in Paragraph 29 of the Complaint are denied for lack of sufficient information upon which to form a belief.

30.

The allegations contained in Paragraph 30 of the Complaint are denied for lack of sufficient information upon which to form a belief.

31.

The allegations contained in Paragraph 31 of the Complaint are denied for lack of sufficient

information upon which to form a belief.

32.

The allegations contained in Paragraph 32 of the Complaint are denied for lack of sufficient information upon which to form a belief.

33.

The allegations contained in Paragraph 33 of the Complaint are denied for lack of sufficient information upon which to form a belief.

34.

The allegations contained in Paragraph 34 of the Complaint are denied for lack of sufficient information upon which to form a belief.

35.

The allegations contained in Paragraph 35, entitled "Prayer" of the Complaint are denied for lack of sufficient information upon which to form a belief.

**COUNTERCLAIM**

NOW INTO COURT, through undersigned counsel, comes Defendant and Counter Claim Plaintiff, **LLOG EXPLORATION COMPANY, L.L.C. ("LLOG"),** formerly LLOG Exploration Company, who asserts this Counter Claim against Apache Corporation ("Apache") as follows:

**A. PARTIES**

1.

Made defendant-in-counter claim herein is Apache Corporation ("Apache") a Delaware corporation with its principal place of business in Houston, Texas.

6

2.

Counterclaim Plaintiff, LLOG, is a Louisiana limited liability company that maintains its principal place of business in Louisiana. LLOG's sole member is a separate entity named LLOG Holdings, L.LC.; and, the sole member of that entity, Gerald Boelte, is a citizen of Wyoming. In the early 2000s, LLOG Exploration Company converted to a Louisiana limited liability company known as LLOG Exploration Company, L.L.C.

## B. JURISDICTION AND VENUE

3.

This Court has diversity jurisdiction under 28 USC 1332(a) as the parties are citizens of different states, and, the amount in controversy exceeds $75,000.00.

4.

LLOG's instant Counterclaim against Apache arises out of the transaction, contract, and occurrence that is the subject matter of Apache's Complaint and the underlying litigation entitled, *Pigeon Land Company, Inc. v. Shell Oil Co*., et al, Docket no. 134-538, 16th Judicial District Court, Parish of Iberia, State of Louisiana ("*Pigeon Land* litigation"). Thus, this Counterclaim is being brought pursuant to F.R.C.P. Rule 13.

5.

Previously, this Court ruled that venue is proper within this Court. (Rec. doc. 23-1)

## C. INTRODUCTION

6.

Through this action, LLOG seeks defense and indemnity from Apache to recover LLOG's damages, consisting of the following:  a) settlement amounts owed to and/or paid to Pigeon Land, Individual Plaintiffs in the *Pigeon Land* litigation, Shell Oil Company, Marathon Oil Company,

and Taylor Energy Company through settlement or otherwise; b) for all of LLOG's attorney fees, expert fees, litigation expenses, costs and interest incurred in the *Pigeon Land* lawsuits (i.e. *Pigeon Land Company, Inc. vs. Shell Oil Company, et al*, docket no. 134-538, 16th JDC, Iberia Parish, Louisiana; Marathon Oil Company vs. LLOG Exploration Company, LLC, docket no. 22-cv-01295, USDC-ED-LA; and Apache Corporation vs. LLOG Exploration Company, LLC, docket no. 22-cv-2019, USDC-SD-TX); c) for all judgments rendered against LLOG through claims brought by Marathon Oil Company, Shell Oil Company, and/or Taylor Energy Company regarding the *Pigeon Land* lawsuits; and d) for defense and indemnity of all inspection and remediation obligations and expenses required by governmental entities including but not limited to the Louisiana Department of Natural Resources and the Louisiana Department of Environmental Quality.

7.

The *Pigeon Land* litigation was instituted when Pigeon Land Corporation and Individual Plaintiffs filed suit for alleged environmental damages to these plaintiffs' properties located in the Bayou Pigeon Field in Iberia Parish, Louisiana. These damages allegedly resulted from oil and gas exploration and production activities performed by plaintiffs' lessees who were all named as defendants, those being: Shell Oil Company, Marathon Oil Company (through its predecessors Plymouth Oil Company and the Ohio Company), Taylor Energy Company, LLOG, WRT Energy Corporation, Gulfport Energy Corporation, the Castex entities and Apache Corporation. Pursuant to assignment, purchase sale agreement, and bill of sale contracts, the plaintiffs' property leases were transferred and assigned amongst the afore-mentioned oil companies with the last operator being Apache Corporation.

8.

In the *Pigeon Land* litigation, LLOG settled with all of the plaintiffs and paid them a considerable sum of money; LLOG incurred litigation and expert fees and expenses in defending that litigation; Taylor Energy Company filed a Cross Claim against LLOG for indemnity; LLOG filed a Cross Claim against Taylor Energy Company for indemnity; Castex filed a cross claim for indemnity against Apache; and LLOG filed cross claims and third party demands for indemnity against the Castex entities and Apache. Presently, LLOG is attempting to negotiate a settlement with Taylor Energy Company that would compensate Taylor Energy Company and Shell Oil Company for its indemnity claims. As a result of the afore-mentioned damages, LLOG is seeking indemnity from Apache to recover these damages.

9.

In the *Marathon Oil Company* litigation, Marathon and LLOG filed claims against one another seeking indemnity for the amounts that each paid to plaintiffs in settlement along with their respective litigation fees and expenses.  To the extent that Marathon obtains a Judgment against LLOG or in the event that LLOG pays a settlement to Marathon; then, LLOG is seeking indemnity from Apache to recover these damages.

10.

LLOG also seeks a Judgment against Apache that LLOG is entitled to a defense brought by all parties in the *Pigeon Land* litigation and the *Marathon Oil* litigation as well as for all of LLOG's damages as itemized in Paragraph six (6) and throughout this Counterclaim.

## D. FACTUAL ALLEGATIONS

### 11.

On or about July 22, 2019, PIGEON LAND COMPANY, INC. ("Pigeon Land") filed its original Petition for Damages alleging that it is the owner-lessor of certain oil, gas, and mineral leases, and/or surface leases with various named defendants, including Shell Oil Company; Marathon Oil Company; Taylor Energy Company, LLC; LLOG Exploration Company, LLC; Gulfport Energy Corporation as successor in interest to WRT Energy Corporation; Castex Energy, Inc.; and Apache Corporation. This lawsuit is referred to herein as the *Pigeon Land* litigation. (**Exhibit 1**)

### 12.

Pigeon Land claims to be the owner of property allegedly contaminated and/or damaged by the oil and gas activities conducted or controlled by one or more of said defendants including property located in Iberia Parish in the Bayou Pigeon Field:

> W/2 of NW/4 and NW/4 of SW/4, Section 18, Township 12 South, Range 11 East;
>
> SE/4 of SE/4, Section 12, Township 12 South, Range 10 East (East of Bayou Pigeon);
>
> SE/4 (East of Bayou Pigeon) and Lots 1, 5, 6, and 11, Section 13, Township 12 South, Range 10 East; and
>
> Lot 2, Section 24, Township 12 South, Range 10 East.

This property (the "Subject Property" also referred to as "plaintiffs' property") is identified by the Assessor of lberia Parish as Parcel #0403509000. (**Exhibit 1**)

### 13.

On or about January 29, 2020, PIGEON LAND COMPANY, INC. ("Pigeon Land") and Thomas Charles Forgey; Charlie Ann Forgey Eues; Heidi Briehn Hatch; Heather Briehn Ortis;

Clay Phillip Briehn; Lionel Charles Landry; Charley F. Driskill, individually and as independent administrator of the Succession of Floris Fay Forgey Driskill; Gretchen Driskill Bliss; Paula Driskill Willis; and Mary Wiseman Dalton Geoffroy, (collectively referred to as "Individual Plaintiffs") filed a First Supplemental and Amending Petition for Damages. (**Exhibit 2**)

14.

Pigeon Land and Individual Plaintiffs claim to be the owner(s) of property allegedly contaminated and/or damaged by the oil and gas activities conducted or controlled by one or more of said defendants including property located in Iberia Parish in the Bayou Pigeon Field:

"1.   Oil, Gas and Mineral Lease dated March 20, 1952, executed by and between Violet Forgey Landry, et al. as Lessors, and Shell Oil Company, as Lessee, recorded on April 11, 1952 at COB 207, Folio 257 under Entry No. 84568.

2.   Correction of Lease dated May 23, 1952, bonus and rental distribution for the Oil, Gas and Mineral Lease dated March 20, 1952, recorded at COB 206, Folio 362 under Entry No. 84994.

3.   Agreement dated August 17, 1956, by Violet Forgey Landry et al., granting Shell Oil Company surface rights and right-of-way, recorded at COB 295, Folio 369, under Entry No. 101927.

4.   Agreement dated October 14, 1959, by Violet Forgey Landry et al., granting pipeline right-of-way in favor of Shell Oil Company, recorded November 1 8, 1959, at COB 362, Folio 88, under Entry No. 114075.

5.   Agreement dated January 13, 1960, by Ann Thomas Forgey, Natural Tutrix of the minor, Charlie Ann Forgey, granting pipeline right-of-way in favor of Shell Oil Company, recorded June 27, 1960, at COB 365, Folio 580 under Entry No. 114718.

6.   Agreement dated November 17, 1966, by Violet Forgey Landry, et al. granting a pipeline right-of-way to Shell Oil Company, recorded November 29, 1966, at COB 500, Folio 307 under Entry No. 137720.

7.   Surface Lease (memoranda of) dated November 17, 1966, by Violet Forgey Landry et al. in favor of Shell Oil Company, recorded December 2, 1966, at COB 500, Folio 392, under Entry No. 137747.

8.    Surface Lease dated November 17, 1966, by Violet Forgey Landry et al., in favor of Shell Oil Company.

9.    Amendment dated November 21, 1966, to Surface Lease of same date, recorded December 1, 1966, at COB 500, Folio 379, under Entry No. 137742.

10.    Surface Lease dated September 1, 1981, by Pigeon Land Company, Inc., in favor of Shell Oil Company, recorded September 11, 1981, at COB 768, Folio 690 under Entry No. 81-7478.

11.    Oil, Gas and Hydrocarbon Lease by Mary W. Geoffroy et al., in favor of LLOG Exploration Company, recorded October 31, 1990, at COB 999, Folio 723 under Entry No. 90-6856.

12.    Act of Correction and Amendment of Oil, Gas and Mineral Lease dated July 1, 1993, by Mary W. Geoffroy et al., in favor of LLOG Exploration Company, recorded July 26, 1994, at COB 1077, Folio 468 under Entry No. 94-5462.

13.    Act of Correction and Amendment of Oil, Gas and Mineral Lease dated July 1, 1993, by Mary W. Geoffroy et al., in favor of LLOG Exploration Company, recorded March 8, 1995, at COB 1089, Folio 175, under entry number 95-1571.

14.    Ratification of Oil, Gas and Mineral Lease dated July 1, 1993, by Pigeon Land Company, Inc., ratifying October 18, 1990, Oil and Gas Lease, recorded March 3, 1995, at COB 1089, Folio 779, under Entry No. 95-1572."

This property is also referred to as "Subject Property".

**(Exhibit 2)**

15.

Beginning in the 1930s, the Subject Property was leased by plaintiffs to Shell and Plymouth (n/k/a Marathon). These leases contained "property damage restoration" clauses. In 1982, Shell assigned its leases to Taylor. (**Exhibit 3**) In 1989, Taylor assigned its leases to LLOG. (**Exhibit 4**) In 1991, Marathon assigned its leases to LLOG. (**Exhibit 5**) In 1995, LLOG assigned all of its leases to WRT Energy Corporation. (**Exhibit 6**) In 1998, WRT changed its name to Gulfport Energy Corporation. (**Exhibit 7**) In 1998, Gulfport assigned the

leases to Castex Energy 1996, L.P. (**Exhibit 8**) In 2002, the leases were assigned from the Castex entities (Castex Energy, Inc., Castex Energy 1995, L.P. and Castex Energy 1996, L.P.) to Apache Corporation.  (**Exhibits 9 and 10**) The assignment of these leases was perfected through assignments, bills of sale, and purchase sale agreements.  All of these contracts contained defense and indemnity agreements obligating the Assignor and the Assignee to defend and indemnify each other for causes of action, obligations, claims, and demands arising before or after the contract's effective date. Pursuant to "successor and assign" language contained within all of these Assignments, the Louisiana Mineral Code, and Louisiana law on real obligations, these leases' obligations for defense, indemnity, and property damage restoration were binding upon all of the oil companies, including Apache.

16.

Pigeon Land and Individual Plaintiffs alleged that these oil companies (Shell, Plymouth/Marathon, Taylor, LLOG, WRT, Gulfport, Castex entities, and Apache) performed oil and gas exploration and production operations on the Subject Property, which caused soil, water, surface and subsurface contamination and other environmental damages to their properties. (**Exhibits 1 and 2**)

17.

In the *Pigeon Land* litigation, Pigeon Land and Individual Plaintiffs named Shell Oil Company; Marathon Oil Company; Taylor Energy Company, LLC; LLOG Exploration Company, LLC; Gulfport Energy Corporation individually and as successor in interest to WRT Energy Corporation; Castex Energy, Inc.; and Apache Corporation as defendants in the principal demand. (**Exhibits 1 and 2**)

18.

In the *Pigeon Land* litigation, cross claims and third party demands were filed for defense and indemnity, including Taylor's cross claim against LLOG; LLOG's cross claim and third party demands against Taylor, the Castex entities and Apache; and Castex Energy, Inc.'s cross claim against Apache.  These claims remain pending, with a jury trial set for December 2023. Given the timely filing of these indemnity claims and the pending status of these claims, prescription for indemnity has been suspended and/or interrupted.  LLOG's cross claim and third party demand, against Apache, along with the Court Order authorizing the filing of same, is attached and incorporated herein. (**Exhibit 11**).

19.

In the *Marathon Oil* litigation, claims and demands were asserted between LLOG and Marathon for indemnity damages arising from the afore-mentioned operations. Marathon is seeking indemnity from LLOG for the damages caused by Apache. (Rec. doc. 28, pp.4-5, *Marathon Oil vs. LLOG*, docket no. 22-cv-01295, USDC-ED-LA)

20.

Apache conducted activities on the Subject Property which allegedly caused environmental damages to the plaintiffs' property. (**Exhibits 1 and 2**)  Specifically, beginning in 2002 and continuing for many years, Apache performed oil, gas and mineral exploration and production activities on the Subject Property; and, it was the last company to do so.  During this time, Apache reported saltwater spills on the subject property. Apache received a Compliance Order from the Louisiana Department of Natural Resources for a commingling issue. Soil and groundwater sampling performed by various experts revealed that there were contaminants and "exceedances" attributable to the operations of Apache.  According to the La. Department of

Natural Resources' records, Apache was the last operator of record for wells (SN 70508 and 970038) which are tied to pits (23P0015 and 23P0116); and, Apache plugged and abandoned these wells. Pursuant to the LA DNR's policies and directives as well as the Louisiana Supreme Court's ruling in *Yuma Petroleum Company vs. Hebert W. Thompson*, 731 So.2d 190 (La. 1999), Apache is the responsible party for restoration of the properties' pits, where exceedances and contaminants have been discovered, along with restoration of Apache's wells, facilities, flowlines, and other equipment.

21.

On or about November 11, 1994, LLOG Exploration Company and WRT Energy Corporation executed an Assignment, Bill of Sale and Conveyance agreement (hereinafter referred to as the "1994 LLOG-WRT Assignment") whereby LLOG assigned and sold all of its ownership, leases, rights, interests and obligations regarding the subject properties to WRT Energy Corporation. In return, WRT assumed all of LLOG's liabilities and obligations involving the subject properties, including but not limited to the plugging and abandoning of all wells and facilities, the payment and performance of all liabilities and obligations arising under local, state and federal law applicable to hazardous materials and waste, and the assumption of all leases regarding the subject properties. Additionally, WRT assumed LLOG's obligations arising under a) the Taylor Energy Company-LLOG Exploration Company Assignment of Interest dated October 2, 1989, b) the Marathon Oil Company-LLOG Exploration Company Assignment and Bill of Sale dated March 1, 1991 effective January 1, 1991, and c) other assignments. Further, WRT agreed to indemnify, defend and hold LLOG harmless from and against any all losses, claims, suits, controversies, liabilities, and expenses arising directly or indirectly out of WRT's ownership and use of the subject properties, without regard to whether such arise from an incident

or condition occurring prior to or after the Effective Date of the Agreement. This Agreement states, "**All of the provisions hereof shall insure to the benefit or, and be binding upon, the parties hereto and their respective heirs, successors, and assigns.**" As such, this afore-mentioned provision is binding upon all of the assigns of LLOG, WRT, Gulfport, Castex, Castex 1995/Castex 1996, and Apache. Further, This Agreement was recorded in the Iberia Parish clerk of court records thereby providing Apache with notice of these obligations as well as the obligations owed to LLOG. (**Exhibit 6**)

22.

On April 23, 1998, WRT Energy Corporation changed its name to Gulfport Energy Corporation. (**Exhibit 7**)

23.

On November 20, 1998, Gulfport Energy Corporation and Castex Energy 1996 L.P. entered into an Assignment, Bill of Sale and Conveyance agreement (hereinafter referred to as the "1998 Gulfport-Castex Assignment") whereby Gulfport (as the successor to WRT) sold and assigned its ownership and leasehold interests in the subject properties (that it had acquired from LLOG) to Castex Energy 1996. This sale included the leases and wells on the properties. This Agreement was recorded in the Iberia Parish Clerk of Court records thereby providing Apache with notice of these obligations as well as the obligations owed to LLOG. (**Exhibit 8**)

24.

In Castex's capacity as the general partner for Castex 1996; Castex executed the 1998 Gulfport-Castex Assignment, on behalf of Castex 1996, as a "general partner". (**Exhibit 8**)

25.

Pursuant to this 1998 Gulfport-Castex Assignment agreement, Castex and Castex 1996 agreed to: 1)  assume obligations arising under and with respect to the subject property; 2) be bound by all documents and instruments recorded in the parishes of Iberia, LaFourche, Terrebonne and Vermilion; 3) assume full responsibility for complying with Environmental Law, for the presence of any Adverse Environmental Condition, the duty to remediate pollution, contamination and/or hazardous materials; 4) assume full responsibility for the plugging and abandoning of any wells and restoration of the subject properties; and 5) agreed to defend and indemnify Gulfport for any claims, demands and/or lawsuits resulting arising out of the above obligations whether or not attributable to the Assignor Gulfport's acts or omissions prior to, during or after the period of Assignor Gulfport's ownership of the subject properties. Further, This Agreement was recorded in the Iberia Parish clerk of court records thereby providing Apache with notice of these obligations as well as the obligations owed to LLOG. (**Exhibit 8**)

26.

Pursuant to this 1998 Gulfport-Castex Assignment, Castex and Castex 1996 agreed that its terms and obligations run with the land and leases and shall be binding and insure to the benefit of Assignor (Gulfport) and Assignee (Castex and Castex 1996) and their respective successors and assigns. As such, this afore-mentioned provision is binding upon all of the assigns of LLOG, WRT, Gulfport, Castex, Castex 1995/Castex 1996, and Apache. Attached to and made a part of this Assignment were Bayou Pigeon Field leases, including those involving Lessee, LLOG.  (**Exhibit 8)**

17

27.

Given the terms of the above referenced Assignments, Castex and Castex 1996 assumed the obligations previously owed by WRT and Gulfport to LLOG, thereby obligating Castex and Castex 1996 to defend and indemnify LLOG for the claims and demands asserted in this lawsuit.

28.

On December 1, 2002, the leases were assigned from Castex Energy, Inc., Castex Energy 1995, L.P. and Castex Energy, 1996, L.P. to Apache Corporation. (**Exhibit 9**)

29.

On December 16, 2002, Apache Corporation (hereinafter referred to as "Apache") entered into a Purchase and Sale Agreement with Castex Energy 1995, L.P. and Castex Energy, 1996, L.P. (hereinafter referred to as the "2002 Castex-Apache PSA) whereby the leases, liabilities and obligations were assigned to Apache. (**Exhibit 10**)

30.

The 2002 Castex-Apache PSA was executed by John R. Stoika, as President of Castex Energy, Inc. in its capacities as the general partners of Castex Energy 1995, L.P. and of Castex Energy, 1996, L.P. (**Exhibit 10**)

31.

Pursuant to Paragraph 9.11 Buyer's Assumption of Liabilities and Indemnification of the 2002 Castex-Apache PSA, Apache agreed that it "….shall assume all obligations, and become liable for all Losses of any kind and character assigned by Seller or any member of the Seller Indemnified Group or **any other Person** and/or Governmental Authorities, arising out of or accruing under or with regard to the ownership or operation of the Properties, regardless of whether

arising out of operations which occurred prior to or after the Effective Time (collectively, the "Assumed Obligations") including without limitation:

1) all liabilities and obligations of Seller with respect to claims of third persons attributable to the subject property;

2) all losses and obligations arising from Material Environmental Conditions arising with respect to the subject properties;

………..

4) plugging and abandonment liabilities; and

5) all other liabilities, whether pre- or post-Effective Time, associated with the subject properties.

**(Emphasis added)  (Exhibit 10)**

32.

As testified to by Apache in its corporate deposition of Christina Linscomb, Apache agreed that 1) the 2002 Castex-Apache PSA shall be binding upon and insure to the benefits of the parties and their respective successors and assigns and 2) Apache agreed to be bound by all leases that it acquired (including leases entered into by LLOG regarding the subject properties) thereby obligating Apache to assume LLOG's obligations and to defend/indemnify LLOG for all claims and demands asserted by or against LLOG.

33.

As a result of the 2002 Castex-Apache PSA, LLOG was and is a third party beneficiary to that contract such that it has stated a cause of action against Apache for defense and indemnity.

34.

Given that LLOG was free from active fault, LLOG is entitled to implied indemnity from Apache who was actively at fault in causing the plaintiffs' damages.

35.

According to the terms of all of the above-referenced Assignments, the Castex entities (Castex, Castex 1995 and Castex 1996) acquired the assets (the subject properties) of LLOG, WRT and Gulfport; and, those Castex entities expressly and/or impliedly assumed the obligations and liabilities of its predecessors (LLOG, WRT and Gulfport) with respect to the subject properties.

36.

Castex Energy, Inc. is the "general partner" for both Castex Energy 1995 L.P. and Castex Energy 1996 L.P. In its capacity as "general partner" for Castex 1995 and Castex 1996, Castex Energy, Inc. executed contracts acquiring and selling ownership and leasehold interests in the sued upon properties. Therefore, Castex Energy, Inc. is liable, *in solido*, with Castex Energy 1995 and Castex 1996 for all damages caused by these three Castex entities; and, Castex Energy, Inc. is responsible for all contractual duties owed by Castex 1995 and Castex 1996.

37.

Pursuant to the terms of the 2002 Castex-Apache PSA and the deposition testimony of Apache's corporate representative, Christina Linscomb,; all of the Castex entities' indemnity obligations owed by the Castex entities to LLOG were assigned to Apache when Apache acquired the ownership and leasehold interests in all of the subject property, including the leases, subleases, right of ways, and easements.

38.

Apache conducted oil and gas exploration and production activities on the subject properties during 2003 through 2010; consequently, it was the last entity to do so.

39.

As such, Apache owes defense and indemnity to LLOG for the defense of the above-captioned lawsuit, for the settlement funds paid by LLOG to Pigeon Land and the Individual Plaintiffs, for the defense of all claims and demands for defense and indemnity asserted against LLOG, and for any type of inspection and remediation required by governmental agencies including but not limited to the Louisiana Department of Natural Resources and the Louisiana Department of Environmental Quality.

40.

Throughout the course of defending the above-captioned lawsuit, LLOG has incurred substantial legal fees, litigation expenses, expert fees, costs and expenses in defending itself. On or about January 12, 2022, LLOG entered into a settlement agreement with Pigeon Land and Individual Plaintiffs whereby LLOG paid a monetary settlement.

41.

Of recent, demands for defense and indemnity have been made by Taylor Energy Company, LLC; Shell Oil Company; and Marathon Oil Company against LLOG.

42.

Through this action, LLOG seeks defense and indemnity from Apache to recover LLOG's damages, consisting of the following:  a) settlement amounts owed to and/or paid to Pigeon Land, Individual Plaintiffs in the Pigeon Land litigation, Shell Oil Company, Marathon Oil Company, and Taylor Energy Company through settlement or otherwise; b) for all of LLOG's attorney fees, expert fees, litigation expenses, costs and interest incurred in the Pigeon Land lawsuits (i.e. Pigeon

Land Company, Inc. vs. Shell Oil Company, et al, docket no. 134-538, 16th JDC, Iberia Parish, Louisiana; Marathon Oil Company vs. LLOG Exploration Company, LLC, docket no. 22-cv-01295, USDC-ED-LA; and Apache Corporation vs. LLOG Exploration Company, LLC, docket no. 22-cv-2019, USDC-SD-TX); c) for all judgments rendered against LLOG through claims brought by Marathon Oil Company, Shell Oil Company, and/or Taylor Energy Company regarding the *Pigeon Land* litigation; and d) for defense and indemnify of all inspection and remediation required by governmental entities including but not limited to the Louisiana Department of Natural Resources and the Louisiana Department of Environmental Quality.

43.

As a result of the acts and omissions of Apache performed on the Subject Property, the damages allegedly caused by Apache to the Subject Property, and the terms of the afore-mentioned agreements; Apache is obligated to defend, reimburse, and indemnify LLOG for LLOG's damages, losses,  and obligations relating to the Subject Property, including LLOG's attorney fees, litigation expenses, expert fees, court costs, expenses, and interest in defending itself; the monetary settlement with Pigeon Land and Individual Plaintiffs; and defense of the claims asserted by Taylor Energy Company, LLC, Marathon Oil Company, Shell Oil Company, and any other party against LLOG regardless of whether that defense and indemnity claim is asserted in this litigation or a separate lawsuit.

44.

LLOG has made amicable demand for the defense and indemnity obligations on Apache; but, it was denied.

45.

As stated above, Apache has breached tort and contractual obligations for defense and indemnity owed to LLOG.

46.

A justiciable controversy exists between LLOG and Apache regarding whether Apache has performed its obligations owed to LLOG under the afore-mentioned agreements and general principles of unjust enrichment, third party beneficiary, and implied indemnity.

47.

LLOG is entitled to a declaration that Apache is obligated to defend, reimburse, and indemnify LLOG for LLOG's damages, losses, and obligations relating to the Subject Property, including LLOG's attorney fees, litigation expenses, expert fees, court costs, expenses, and interest in defending itself; the monetary settlement with Pigeon Land and Individual Plaintiffs; and defense of the claims asserted by Taylor Energy Company, LLC, Marathon Oil Company, Shell Oil Company, and any other party against LLOG regardless of whether that claim was asserted in this litigation or a separate lawsuit.

48.

LLOG is entitled to indemnity and contribution from Apache for LLOG's damages, losses, and obligations relating to the Subject Property, including LLOG's attorney fees, litigation expenses, expert fees, court costs, expenses, and interest in defending itself; the monetary settlement with Pigeon Land and Individual Plaintiffs; and defense of the claims asserted by Taylor Energy Company, LLC, Marathon Oil Company, Shell Oil Company, and any other party against LLOG, whether it was brought in this lawsuit or a separate lawsuit.

49.

LLOG pleads all available relief at law, in tort, contract, unjust enrichment, or by any other basis for which relief may be shown upon the factual allegations asserted herein or

proven at trial of this matter, including, but not limited to, express and implied contractual and tort indemnity, subrogation, and contribution (including but not limited to La. C.C. arts. 1804 and 1805).

50.

Pigeon Land and the Individual Plaintiffs alleged that Apache committed active fault and negligence, were strictly liable, and breached its contracts because Apache allegedly "conducted, directed and participated in various oil and gas exploration and production activities as operators and/or working interest owners and/or joint venturers in Bayou Pigeon Field" and that Apache's damage-producing activities consisted of "dredging of canals, drilling of wells, placement and maintenance of drilling and production structures, removal of various drilling or production facilities, pits, sumps, pipelines, flowlines, tank batteries, wellheads, and measuring facilities." As a result of Apache's acts and omissions, the underlying plaintiffs filed suit against Apache, LLOG and other defendants in this litigation. LLOG is free from active fault and negligence.

51.

Throughout the course of the underlying litigation, LLOG incurred substantial legal fees, litigation expenses, expert fees, costs and expenses in defending itself; and, it has recently entered into a settlement agreement with Pigeon Land and the Individual Plaintiffs whereby LLOG paid a monetary settlement.

52.

As stated above, Apache has breached its contractual and tort obligations owed to LLOG as Apache's active negligence and fault caused damages to the properties of Pigeon Land and the Individual Plaintiffs; and, Apache has failed to defend and indemnify LLOG.

24

53.

Given the acts and omissions of Apache, the afore-mentioned contracts, and that Apache was the last operator of record performing activities on the Subject Property, LLOG is entitled to defense and indemnity from Apache for any inspection, restoration, and/or remediation obligations required by any governmental agency, including the Louisiana Department of Natural Resources and the Louisiana Department of Environmental Quality.

54.

Inasmuch as LLOG's claims for defense and indemnity arise out of contracts whereby LLOG is a third party beneficiary to the 2002 Castex-Apache PSA, LLOG need show only potential, rather than actual, liability in order to obtain indemnity from Apache.

55.

LLOG's settlement of the *Pigeon Land* litigation was reasonable in light of all the circumstances of that case, including but not limited to future litigation fees and expenses through a jury trial, the likelihood of an adverse judgment against potentially solidary obligors, and the monetary judgment that could attached to such a judgment.

### E. CLAIMS FOR RELIEF

**With respect to each of the below Counts asserting LLOG's causes of action, LLOG restates all of the above and foregoing paragraphs as if copied herein *in extenso*.** LLOG is asserting causes of action against Apache for indemnity based on the following counts.

### Count 1 – Indemnity and Unjust Enrichment

56.

LLOG has paid settlements to the plaintiffs in the Pigeon Field litigation which ought to have been paid by the wrongdoer, Apache; and, LLOG was free from active fault.  Given

Apache's active fault and that LLOG paid these settlements as a solidary obligor with Apache, LLOG is entitled to tort indemnity and implied contractual indemnity. Additionally, LLOG incurred litigation fees and expenses for the above reasons entitling LLOG to indemnity under these same principles.

### Count 2 – Third Party Beneficiary/*Stipulation Pour Autrui*

57.

LLOG has a right of action for indemnity against Apache because it is a "third party beneficiary" due to the language contained within the Purchase and Sale Agreement between Castex and Apache dated December 16, 2002 ("2002 Castex-Apache PSA"). According to Section 1.02 of this PSA, Apache acquired all of the Seller's rights, titles and interests in the plaintiffs' property including the lands as a lessor under the oil and gas leases. (**Exhibit 10**)

58.

Pursuant to Section 9.11 of the 2002 Castex-Apache PSA, LLOG is a third party beneficiary to this PSA such that Apache owes LLOG indemnity for LLOG's damages given the below language:

9.11 Buyer's Assumption of Liabilities and Indemnification.

> (a) Seller owns the Properties and, as a consequence thereof, is· or may be liable for various obligations or contingent obligations based upon such ownership interest. Buyer is purchasing all of Seller's interest in the Properties. Buyer and Seller have agreed that, save and except to the extent that Buyer is entitled to indemnification from Seller pursuant to Section 9.10(b) hereof, upon the occurrence of the Closing and Buyer's acquisition of title to the Properties, **Buyer shall assume all obligations, and become liable for all Losses of any kind and character asserted by Seller or any member of the Seller Indemnified Group or any other Person** and/or Governmental Authorities, **arising out of or accruing under or with regard to the ownership or operation of the Properties, regardless of whether arising out of operations which occurred prior**

**to or after the Effective Time (collectively, the "Assumed Obligations"),** including, without limitation:

(1) all liabilities and obligations of Seller with respect to claims of third Persons against Seller with respect to gas imbalances attributable to the Properties;

(2) **all Losses, and obligations of any kind or character, arising from Material Environmental Conditions arising or accruing under or with respect to the ownership or operation of the Real Property Interests before, on or after the Effective Time;**

(3) subject to the provisions of Section 9.06(c), Buyer's share of all ad valorem Taxes with respect to the Properties on and after the Effective Time;

(4) **Plugging and Abandonment liabilities**; and

(5) **all other liabilities, whether pre- or post-Effective Time, associated with the Properties**, other than the Excluded Properties.

**(Emphasis added**)

The above paragraph specifically states that "Buyer shall assume all obligations, and become liable for all Losses of any kind and character asserted by Seller or any member of the Seller Indemnified Group or any other Person...." LLOG is that "other Person" seeking indemnity from Apache. (**Exhibit 10**)

59.

According to Section 12.01 <u>Definitions</u> of the 2002 Castex-Apache PSA:

"Losses" is defined as "....all losses, debts, liabilities, obligations, claims, awards, .settlements, judgments, damages, costs, and expenses (including without limitation reasonable attorneys' fees, experts' fees, court or arbitration costs, and related costs, including costs of investigation."

"Material Environmental Condition" means a condition which causes Seller's Real Property Interests to be in violation of Environmental Laws or restoration obligations of applicable third Person agreements, including, without limitation conditions with respect to the air, land, soil, surface, subsurface strata, surface water, ground water or sediments which are subject to remediation under Environmental Laws in effect as of the Effective Date or thereafter.

According to Section 11.05 <u>References</u> of the 2002 Castex-Apache PSA:

"Person" shall mean any natural person, corporation, partnership, limited liability company, trust, estate, Governmental Authority **or other legal entity."** (emphasis added) **(Exhibit 10)**

The broad language afforded to the definition of "person" by Apache to include non-parties (such as governmental authority, trust, estate, limited liability company and other legal entities) to the Castex-Apache PSA results in providing third party beneficiary status and a *stipulation pour autrui* to LLOG.

60.

Given the effects of the afore-mentioned 2002 Castex-Apache PSA, along with the prior assignments, bills of sale and purchase sale agreements, Apache's stipulation for a third party (LLOG),  is manifestly clear; there is certainty as to the benefit (defense and indemnity) provided the third party; and the benefit is not a mere incident of the contract between Castex and Apache. As a result of Apache's stipulation,  LLOG, as the third party beneficiary, has the right to demand performance from Apache for defense and indemnity.

61.

The 2002 Castex-Apache PSA reveals that Apache intended to to discharge a defense and indemnity obligation owed to a third party, including LLOG.

**Count 3 – Successors and Assigns Created an Assignment**

62.

Apache's obligation to indemnify LLOG also arises from the "successor and assigns" language contained in the aforementioned contracts (i.e. purchase sale agreements, bills of sale, and assignments), the Louisiana Mineral Code and La. C.C. art. 1764.

63.

The Assignment, Bill of Sale and Conveyance between LLOG and WRT (1994 LLOG-WRT Assignment) provided, "All of the provisions hereof shall insure to the benefit or, and be binding upon, the parties hereto and their respective heirs, successors, and assigns." This Agreement was recorded in the Iberia Parish Clerk of Court mortgage records so as to provide notice to third parties such as Apache.  (**Exhibit 6**)

64.

The Assignment, Bill of Sale and Conveyance between Gulfport and Castex (1998 Gulfport-Castex Assignment) provided, "The terms and provisions of this Conveyance shall be deemed to be convenants (sic) running with the Land and Leases, and shall extend to and be binding upon, and shall inure to the benefit of Assignor and Assignee and their respective successor and assigns." This Agreement was recorded in the Iberia Parish Clerk of Court mortgage records so as to provide notice to third parties such as Apache. (**Exhibit 8**)

65.

Through the aforementioned 2002 Castex-Apache PSA, Apache acquired ownership of the plaintiffs' property (including leases).  The above-cited "successor and assigns" language contained within the purchase sale agreements (PSA) and the recording of these PSA contracts with the Iberia Parish Clerk of Court resulted in Apache being liable unto plaintiffs, LLOG, and others for Apache's ownership/lessee status of the properties and operations on the properties. This conclusion is supported

29

by the following analysis. The "successor and assigns" language specifically stated that all of the provisions of the PSA contracts will be binding upon all successors and assigns — Apache is a successor in title and is an assignee.

**Count 4 – Defense and Indemnity Obligations are real rights.**

66.

As recognized by the Mineral Code, "mineral rights" are "real rights". Specifically, La. R.S. 31:16 states, "The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease. This enumeration does not exclude the creation of other mineral rights by a landowner. **Mineral rights are real rights** and are subject either to the prescription of nonuse for ten years or to special rules of law governing the term of their existence." (emphasis added)

67.

According to La. R.S. 31:127, "The lessee's interest in a mineral lease may be assigned or subleased in whole or in part." Pursuant to the afore-mentioned contracts, LLOG's leases were assigned to WRT, Gulfport, Castex and Apache.

68.

According La. C.C. art. 1764,

> A real obligation is transferred to the universal or particular successor who acquires the movable or immovable thing to which the obligation is attached, without a special provision to that effect.

> But a particular successor is not personally bound, unless he assumes the personal obligations of his transferor with respect to the thing, and he may liberate himself of the real obligation by abandoning the thing.

> The Author's comment (C) to the above code article states, "A real obligation passes to a subsequent acquirer of the thing to which it is attached without need of a stipulation to that effect. Thus, when an estate burdened with a servitude is transferred, the real obligation that is correlative of the

30

right of servitude is also transferred. See C.C. Art. 650(2) (Rev.1977). It is otherwise with respect to personal obligations.

La. C.C. art. 1984 provides:

Rights and obligations arising from a contract are heritable and assignable unless the law, the terms of the contract or its nature preclude such effects.

Thus, the obligations of defense and indemnity owed to LLOG are real rights attached to the Subject Property that Apache agreed to satisfy upon execution of the 2002 Castex-Apache PSA.

## Count 5 – Solidary Obligations

69.

Inasmuch as the *Pigeon Land* litigation plaintiffs sued LLOG, Apache and the other defendants under theories of joint and solidary obligations, LLOG is entitled to contribution and indemnity from Apache.

70.

Pursuant to the Louisiana Mineral Code (La. R.S. 31:122, 31:128, and 31:129), La. C.C. arts. 1804 and 1805, and Louisiana jurisprudence, the original lessee and all subsequent lessees of mineral, oil and gas leases are solidarily liable to the lessor-owner.

71.

Given that LLOG has incurred damages, including the payment of settlements to the *Pigeon Land* litigation plaintiffs and the incurring of litigation fees and expenses in defending the *Pigeon Land* litigation, LLOG has discharged a solidary obligation owed by its solidary co-obligor, Apache. As a result, LLOG is entitled to contribution  and indemnity from Apache for those damages under La. C.C. arts. 1804 and 1805.

## Count 6 – Declaratory Judgment

72.

An actual, justiciable controversy exists between LLOG and Apache concerning their respective rights, obligations and liabilities under the afore-mentioned contracts (i.e. Assignments, Bills of Sale, and Purchase Sale Agreements). In particular, a controversy presently exists concerning Apache's obligations to assume the defense of LLOG and to assume liability and indemnify LLOG for all of its damages associated with the *Pigeon Land* litigation and lawsuits.

73.

A declaratory judgment is necessary and proper to set forth and determine the parties' respective rights, obligations, and liabilities under these contracts, including the 2002 Castex-Apache PSA and the 1994 LLOG-WRT Assignment, Bill of Sale and Conveyance (a/k/a PSA) (Exhibits 4 and 8).

74.

Pursuant to 28 USC 2201, LLOG requests a Declaratory Judgment that:

a) Apache must protect, defend, and indemnify LLOG for all of its damages resulting from the *Pigeon Land* litigation and lawsuits, including payment to LLOG for the following: 1) settlement amounts owed to and/or paid to Pigeon Land, Individual Plaintiffs in the *Pigeon Land* litigation, Shell Oil Company, Marathon Oil Company, and Taylor Energy Company through settlement or otherwise; 2) for all of LLOG's attorney fees, expert fees, litigation expenses, costs and interest incurred in the *Pigeon Land* lawsuits (i.e. Pigeon Land Company, Inc. vs. Shell Oil Company, et al, docket no. 134-538, 16th JDC, Iberia Parish, Louisiana; Marathon Oil Company vs. LLOG Exploration

Company, LLC, docket no. 22-cv-01295, USDC-ED-LA; and Apache Corporation vs. LLOG Exploration Company, LLC, docket no. 22-cv-2019, USDC-SD-TX); 3) for all judgments rendered against LLOG through claims brought by Marathon Oil Company, Shell Oil Company, and/or Taylor Energy Company regarding the *Pigeon Land* lawsuits; 4) for defense and indemnity of all inspection and remediation required by governmental entities including but not limited to the Louisiana Department of Natural Resources and the Louisiana Department of Environmental Quality; 5) for defense of all claims and demands asserted by Marathon, Shell and Taylor in the *Pigeon Land* litigation and *Pigeon Land* lawsuits; and 6) for defense and indemnity for all claims, demands, lawsuits, judgments, settlements and liabilities arising out of the "ownership, operation, use, plugging, abandoning and/or restoration of pits, lands, leases, wells, fixtures, flowlines, equipment or other personal property that is the subject of the *Pigeon Land* litigation.

### Count 7 – Unjust Enrichment

75.

To the extent that LLOG has no other available remedy against Apache, LLOG is entitled to recover from Apache under the doctrine of unjust enrichment, thereby entitling LLOG to the full amount of its damages as a result of Apache being unjustly enriched and LLOG being unjustly impoverished, plus interest, costs, attorney fees and other equitable relief.

### PRAYER FOR RELIEF

WHEREFORE, after due proceedings are had, LLOG prays this Honorable Court enter Judgment as follows:

a) LLOG's Answer to the Complaint with Compulsory Counterclaim be deemed good and sufficient, there be judgment herein in favor of LLOG EXPLORATION COMPANY, LLC and against plaintiff Apache Oil Company, awarding LLOG its damages, consisting of the following: 1) settlement amounts owed to and/or paid to Pigeon Land, Individual Plaintiffs in the *Pigeon Land* litigation, Shell Oil Company, Marathon Oil Company, and Taylor Energy Company through settlement or otherwise; 2) for all of LLOG's attorney fees, expert fees, litigation expenses, costs and interest incurred in the *Pigeon Land* lawsuits (i.e. Pigeon Land Company, Inc. vs. Shell Oil Company, et al, docket no. 134-538, 16th JDC, Iberia Parish, Louisiana; Marathon Oil Company vs. LLOG Exploration Company, LLC, docket no. 22-cv-01295, USDC-ED-LA; and Apache Corporation vs. LLOG Exploration Company, LLC, docket no. 22-cv-2019, USDC-SD-TX); 3) for all judgments rendered against LLOG through claims brought by Marathon Oil Company, Shell Oil Company, and/or Taylor Energy Company regarding the *Pigeon Land* lawsuits; 4) for defense and indemnity of all inspection and remediation required by governmental entities including but not limited to the Louisiana Department of Natural Resources and the Louisiana Department of Environmental Quality; 5) for defense of all claims and demands asserted by Marathon, Shell and Taylor in the *Pigeon Land* litigation and *Pigeon Land* lawsuits; and 6) for defense and indemnity for all claims, demands, lawsuits, judgments, settlements and liabilities arising out of the "ownership, operation, use, plugging, abandoning and/or restoration of pits, lands, leases, wells, fixtures, flowlines,

equipment or other personal property that is the subject of the *Pigeon Land* litigation.

b) Declaratory Judgment that Apache was and is obligated to provide LLOG a defense to the demands made by the plaintiffs and by Shell, Marathon and Taylor in the *Pigeon Land* litigation and the *Pigeon Land* lawsuits;

c) Declaratory Judgment that Apache is obligated to immediately indemnify and reimburse LLOG for all of LLOG's damages, as outlined in paragraph (a) in the Prayer for Relief;

d) For all other damages and relief as may be found reasonable under the premises, including attorney fees, costs, expenses and pre-judgment and post-judgment interest, and,

e) For all general and equitable relief to which LLOG may show itself entitled.

Respectfully submitted,


/s/ John H. Hughes
John H. Hughes (Bar # 14519)
Allen & Gooch, A Law Corporation
2000 Kaliste Saloom Road, Ste. 400 (70508)
P.O. Box. 81129
Lafayette, Louisiana 70598-1129
Telephone: (337) 291-1290
Facsimile: (337) 291-1295
Email JohnHughes@Allengooch.com
*Attorneys for LLOG Exploration Company, L.L.C.*


And

Respectfully submitted,

*/s/ Brent M. Maggio*
BRENT M. MAGGIO (#19959)
ALLEN & GOOCH
301 N. Columbia Street, 2nd Floor
Covington, LA 70433
Tel: 504.836.5260
Fax: 504.836.5265
BrentMaggio@AllenGooch.com
*Attorney for LLOG Exploration Company, L.L.C.*
*Attorney-in-Charge*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of March, 2023, a copy of the above and foregoing was filed electronically with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants. I also certify that I have this same day forwarded a copy of this filing by regular U.S. Mail, postage pre-paid, to all non-CM/ECF participants.

*/s/ Brent M. Maggio*
BRENT M. MAGGIO